CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
MAY 15 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

DAVID WARREN,
                      *Plaintiff,*

v.

TRI TECH LABORATORIES, INC.,
                      *Defendant.*

CIVIL ACTION NO. 6:12-CV-00046

MEMORANDUM OPINION

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

The *pro se* Plaintiff filed this action claiming race-based discriminatory treatment in employment and wrongful dismissal in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Plaintiff has filed a "Motion to Strike Defendant's Affirmative Defenses and Answer, and in the Alternative, Motion for Partial Summary Judgment," alleging insufficiency in Defendant's affirmative defenses and answer, and alternatively seeking partial summary judgment, apparently on the ground that there is no genuine dispute of material fact that he, as an African-American male, received treatment disparate from white employees. At present, no discovery has been conducted, and Plaintiff has not served his initial disclosures (although Defendants have served theirs).

As explained herein, Plaintiff's argument to strike certain answers and affirmative defenses must fail, given the law as it applies to this case. And, as explained at the hearing on Plaintiff's motion, the alternative motion for partial summary judgment is premature, and must be denied.[1]

---

[1] Previously, Defendant filed a motion to dismiss on the ground that the complaint was filed 91 days after Plaintiff received his right-to-sue notice from the Equal Employment Opportunity Commission (the "EEOC"),
(continued...)

# I.

On September 17, 2012, Plaintiff filed "this action in order to enforce his rights to be free from discrimination based upon his race as provided by Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981." The complaint states, in part (paragraph numbering and exhibit citations omitted; quoted verbatim except for bracketed insertions):[2]

> Plaintiff is an African American male citizen of the Unites States who resides in McKinney, Texas.
>
> Defendant Tri Tech Laboratories, Inc. is a foreign corporation licensed and doing business in the State of Virginia. Tri Tech Laboratories is a contract or third party manufacturer of beauty and cosmetic products.
>
> Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission [the "EEOC"] and received his Notice of Right to Sue on June 18, 2012.
>
> * * *
>
> Plaintiff began employment with Defendant as the Director of Quality on February 4, 2012 at its Lynchburg, Virginia facility.
>
> Defendant's method of selecting which employees are afforded an opportunity to participate in Defendant's well-established and robust, written progressive discipline

---

[1](...continued)
but the 90th day fell on a Sunday; therefore, the complaint was timely filed, and I denied the motion. Defendant also filed a motion to strike Plaintiff's quite belated reply to Defendant's opposition to the instant motion; however, in the interest of justice and judicial economy, and in light of Plaintiff's *pro se* status, I denied Defendant's motion to strike.

[2] The complaint generally does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a short and plain statement of why the pleader is entitled to relief. However, a court must construe the pleadings of a *pro se* plaintiff liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), especially when the plaintiff alleges civil rights violations, *Brown v. N.C. Dep't of Corrections*, 612 F.3d 720, 724 (4th Cir. 2010); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Still, although a court must provide leeway to a *pro se* plaintiff, this "leeway must be tempered to require the Plaintiff to comply with . . . the pleading requirements of Rule 8," *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 615 (E.D. Va. 2010), and a court may not act as the litigant's advocate and construct legal arguments that the plaintiff has not made, *see Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

program is a primary source of discrimination which has resulted in an unfair and wrongful termination of employment opportunities for the Plaintiff. In its response to the [EEOC] regarding Plaintiff's charge, Defendant referenced its language in its written handbook, citing it reserves the right, in its sole discretion, whether and what disciplinary action will be taken in a given situation. Defendant then makes an erred statement that Plaintiff was responsible for a mislabeled Over the Counter drug product as credence to its actions.

Defendant stated in its response to the [EEOC] that it terminated Plaintiff's employment due to mislabeled products and complaint from customer. Although the Plaintiff denies and such allegation of fact surrounding mislabeled products or complaints lodged that were a result of Plaintiff's actions, Caucasian employees have conducted far worse offenses which could and possibly should have resulted in loss of business from its customers prior to Plaintiff's employment. Those Caucasian employees have not been terminated, reprimanded, or even subjected to any disciplinary actions by Defendant. On February 8, 2010, approximately four (4) days after Plaintiff's employment began, a formal notice of a recall of products produced by the Defendant in 2011 for microbial contamination of Burkholderia Cepacia prior to Plaintiff's employment was published by the Food and Drug Administration [the "FDA"] for Kao Brands, makers of Jergens and John Freda product dated December 29, 2009. The products were traced back to Defendants' facility solely and released under the auspices of the quality management system of Mark Hallett, Sr. Director of Quality (Caucasian), Cathleen Owen, Director of Quality (Caucasian), and Blake Hemmel, Manager of Quality (Caucasian). Manufacturing operations at the facility was halted for approximately one week. Neither of these Caucasian employees, directly responsible for preventing unadulterated products from entering the marketplace that can harm to the public under Federal Food, Drug, and Cosmetic act, were terminated for their actions.

Prior to Plaintiff's tenure with Defendant and during the approximate time periods of November 2009 and December 2009, Caucasian Employees, Mark Hallett, Cathleen Owen, and Blake Hemmel, released products manufactured for Beauty Avenues, the makers of Bath and Body Works product, that did not meet the legal fill weight under Federal Food, Drug, and Cosmetic Act. Beauty Avenues raised the issue as a customer complaint during Plaintiff's employment where their stores and patrons complained. These products were subject to recall under Federal Food, Drug, and Cosmetic Act and could have resulted in loss of business.

Prior to Plaintiff's tenure and while all Caucasian employees were responsible, Defendant has release OTC products that were mislabeled with the wrong expiration date as shown by Defendant's previous year scorecard provided by Beauty Avenues.

Prior to Plaintiff's tenure, Defendant shipped products to Canada that were mislabeled and were not approved through customs in the country. Caucasian Employees, mark Hallett and Cathleen Owen were responsible for the released

products that were held in customs due to improper labeling of hand sanitizers manufactured for Beauty Avenues, the makers of Bath and Body Works. Plaintiff corrected the issue where the products could be released from customs and properly enter the Canadian marketplace.

During Plaintiff's employment, Mark Hallett, Caucasian, instructed a change be made to the manufacturing process for liquid moist soaps. This change caused the products to be adulterated under Federal Food, Drug, and Cosmetic Act, where the products were not homogeneous and a copolymer and acrylic was undispersed in the products. The defect was noted by the rancidity and foul, sulfur odor caused from the lack of neutralization of the acrylic copolymer to the appropriate pH. Beauty Avenues, their largest customer, complained about the odor of the Twilight Woods product on or about May 3, 2010. The Twilight Woods was a new product, with approximately 400,000-500,000 units affected. These products should ahve been destroyed. The Caucasian employee was not terminated or subjected to disciplinary actions for his actions.

Additionally, other Caucasian employees have been formally cited for lack of performance and have been afforded opportunities under Defendant's progressive discipline policy, even to the extent of outside counseling assistance for managerial training.

Plaintiff's performance was outstanding and had received praise from internal employees and Defendant's customers, including Bierdorf and Beauty Avenues. Yet, Plaintiff was never informed about his performance or that there was an issue with the customers during his employment; thus he was never given an opportunity to correct any deficiency in his performance. Defendant has presented no documented evidence of any meeting where Plaintiff and his supervisor discussed a performance issue.

Defendant states to the [EEOC] that Plaintiff was not able to perform up to Tri Tech's expectations for the position. Upon hire, Mark Hallett, Caucasian, stated to me directly that Cathleen Owen, former Caucasian Director of Quality whose position Plaintiff was hired to replace, was not performing well. Mrs. Owen was promoted to Regulatory Director for the corporation. However, he went on to state that she should have been fired because she could not perform the duties.

Defendant states as a precursor to terminating Plaintiff's employment that Beauty Avenues, its largest customer, was in some way disappointed in his performance. Beauty Avenues has been disappointed with Tri Tech for periods well before the Plaintiff ever heard of the company. The scorecard provided by the Beauty Avenue in February 2010, reflecting performance for the previous calendar year, states on page 5that Tri Tech should continue to focus on OTC and on pages 3-4 of the document state the Defendant should be proactive in quality issue resolution, improve on the number and percentage of defective products and further states OTC

definitely needs improvement in 2010 listing the following poor performance indicators from 2009: 1) mislabeled OTC AB Moisturizing Hand Soap was labeled AB Cleansing Hand Soap, 2)Fragrance didn't match standard, 3) Incorrect expiration date on OTC products, printed 3 year expiration date instead of 2 years, and 4) Finished units were found with mixed price stickers. In addition to the scorecard, Beauty Avenues representatives stated that they were excited to work with the Plaintiff and that he was improving the quality and communications tremendously, in such a short period. They also stated that the organization was disappointed with Mark Hallett and Cathleen Owen and the way they managed the quality unit. Similar statements were made by Biersdorf's employees, where Tri Tech did not complete the Corrective Action needed to begin the phases of product transfer until the Plaintiff managed the process.

The Defendant is in internal conflict regarding its written and implemented progressive discipline policy, as to the existence of or non-existence of such a policy. In its letter to the Plaintiff dated June 10, 2010 at paragraph 3, Defendant states "..Thus, the reality is that while Tri Tech does not have any process which mandates progressive discipline as you suggest, even if this had been the case, the seriousness of your performance issues required the actions taken against you" and later states to the [EEOC] in paragraph 2, "...Respondent denies all allegations and asserts that they will generally take action in a progressive manner." The conflicts in application written and well-established reveals an internal struggle and indicates a potential pattern of inconsistent treatment and unequal and unfair treatment as is evident on the fact of the Plaintiff's complaint.

Defendant has adopted written handbook denominated as Tri Tech Laboratories, Inc. Employee Handbook, where it outlines and states, "The Company has adopted a progressive discipline policy to identify and address employee related problems." In its written handbook it provides guidance for its probationary period that is twenty-eight (28) days in length to evaluate its new hire employees where it states in its Discipline/Discharge policy "Probationary employees are held to the highest standards of behavior and job performance. Progressive Discipline is the exception rather than the rule for probationary employees." It further outlines the policy stating, "Tri Tech will normally adhere to the following progressive disciplinary process: 1) Informal Discussion, 2) Verbal Warning, 3) Written Warning, 4) Suspension, and 5) Termination.

Due to Defendant's wrongful implementation of its written and accepted programs and practices, Plaintiff was terminated without consideration or even acknowledgement of an opportunity to correct any performance gap that might have been present or even a written list of duties, tasks, and expectations, while Caucasian employees have performed far less poorly than Plaintiff could ever perform, even if Defendant's allegations were true, and have been granted access to the progressive discipline program and even to extreme measure of progressive discipline not listed on its written policy, outside counseling.

> As direct and proximate cause of the actions of the Defendant, Plaintiff has been terminated and denied employment terms and conditions and privileges of employment due to his race in violation of 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § 1981 and has no other recourse but to file suit. He is entitled to equitable relief for the amount of pay he would have earned but for the discriminatory actions by the Defendant. Plaintiff seeks compensatory damages for the mental anguish and distress, embarrassment, and humiliation that he suffered as a result of racial discrimination by Defendant. Plaintiff has been damaged by the intentional acts of the Defendant and is therefore entitled to relief of the Court.
>
> Plaintiff has included Exhibit "F", email correspondence with racial overtones and harassment, and Exhibit "G", weekly highlights submitted to manager for performance. . . .

The "Exhibit 'F'" to which the complaint refers is a chain of e-mails, beginning on Wednesday, April 21, 2010, with a message from Blake Hemmel to a person named Khanh Severino, to whom Mr. Hemmel provided a tracking number. Khanh Severino responded to Mr. Hemmel (and apparently copied the response to others) as follows: "Just got the package so I will be reviewing them. I will be away from the office next week so I will have to send it to you on Monday 5/3." Mr. Hemmel then forwarded the e-mail to Tri Tech employees Mark Hallett, David Warren, Cathleen Owen, Theresa McGuire, and Rhonda Seay, including the following message: "THANK GOD! A WEEK OF PEACE AND QUIET!" Several messages between these persons ensued, including the statement, "That woman is a menace!" and, at least in the document provided by Plaintiff, concluding with an e-mail message from Mark Hallett to the others that simply stated, "She's Viet Nam's revenge."

The "Exhibit 'F'" to which the complaint refers appears to be two pages of notes, entitled "Weekly Highlights," that Plaintiff compiled regarding work he had been doing.

As previously stated, Plaintiff filed his complaint on September 17, 2012. The complaint was served on Defendant on or about January 10, 2013. Defendant responded on January 31,

2013, filing an answer and a motion to dismiss, which has been denied.[3] Defendant's answer included 15 affirmative defenses responding to the complaint.

Plaintiff filed the instant motion on February 22, 2013, apparently alleging insufficiency of Defendant's answer and affirmative defenses and that there is no genuine dispute of material fact that he, as an African-American male, was treated disparately than Defendant's white employees.[4] However, as previously observed, no discovery has yet been conducted in this matter and, at the time Plaintiff filed the instant motion, the parties had not yet served their initial disclosures on each other.

---

[3] As previously noted, *see* n. 1, *supra*, Defendant moved to dismiss on the ground that Plaintiff's complaint was filed 91 days after he received his right-to-sue notice; however, I denied the motion because the 90th day fell on a Sunday, and thus the complaint was timely filed.

[4] The instant motion and the reply to Defendant's opposition are similar to the complaint, *i.e.*, to the limited extent that his statements are coherent, they are conclusory and are unsupported by any evidence (given that there is not yet a record before the court). For example, Plaintiff's memorandum in support of the motion states:

> Pursuant to Rule 8 and 12(f) of the Federal Rules of Civil Procedure, the Plaintiff moves to strike Defendant's affirmative defenses, paragraphs denominated as First through Fourteenth of its Answer, for failure to satisfy the Federal Rules of Civil Procedure pleading requirements and pursuant to Rule 8, 11(b), and 12(f) moves to strike Defendant's answer, where Defendant willfullly and knowingly made untruthful denials of facts to the material facts to the court and signed the pleading for the record. Moreover, the Defendant's answer was presented to the court in bad faith and willful disregard to the Rules.
>
> Affirmatively, the Plaintiff moves the court to grant his motion for partial summary judgment because there are disputed issues of material facts and the Plaintiff is entitled to judgment as a matter of law.
>
> * * *
>
> Fourteen of the last fifteen paragraphs of [Defendant's] answer assert conclusory affirmative defenses without pleading any facts that form a basis for the defense. In response to the allegations in paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 of the Complaint, the Defendant admits in part and denies the remaining allegations. The denials violates Rule 8(b)(2)(3(4) and Rule 11(b)(4) where under the Rules such denial must fairly respond to the substance of the allegations and such denials of factual contentions are warranted on evidence after reasonable inquiry.

In support of its opposition to the motion, Defendant filed the "Affidavit of Steven Fullerton," the president of Tri Tech Laboratories, Inc. since October 2007.[5] The affidavit, quoted here in pertinent part, provides a more developed frame and context for the facts as posed in the complaint and the assertions set forth in Defendant's answer (paragraph numbering omitted):

> David Warren was employed as the Technical Director of Quality Assurance up until the time of his termination in May 2010.
>
> The Technical Director of Quality Assurance is ultimately accountable for issues of product quality and customer dissatisfaction.
>
> During Warren's tenure, Tri Tech received multiple complaints about Warren's performance, both internally as well as from Tri Tech's customers. Two events, in particular, led to Tri Tech's decision to terminate Warren's employment.
>
> Warren, as the Technical Director of Quality Assurance, was assigned to lead an investigation into an FDA-regulated drug product that had incorrect labels on them. The investigation dragged on to such an extent that the customer in question would call daily inquiring as to when the product would ship.
>
> Following a visual inspection of all products, Warren recommended that the products be shipped out. Importantly, even one mislabeled unit could trigger a recall. Doubtful of the accuracy of a visual inspection, Mark Hallett ("Hallett"), Senior Director of Quality, ordered an electronic re-inspection of the products, which uncovered 2,268 additional units with the wrong back label on them.
>
> The investigation was assigned to and spearheaded **solely** by Warren, by virtue of his position at the Company. Warren's choice to disregard recognized laboratory procedures and instead incorporate visual inspection of the product labels directly resulted in the drawn-out and ultimately unsuccessful management of the quality issue in question.
>
> The second major event behind Warren's termination involved an olfactory issue that affected several hundred thousand units from Tri Tech's largest client. Tri Tech and the client conducted a joint investigation, and Warren, as Technical Director, was once again asked to lead the investigation on behalf of Tri Tech.

---

[5] Plaintiff argues that the affidavit of Steven Fullerton is a "perjured document," apparently because it is a verbatim copy of an affidavit sworn previously by Mark Hallett.

During his investigation, Warren pursued a single theory of what had created the off-odor, and conducted testing in an attempt to discover the root cause. Ultimately, his single cause theory of the off-odor was proven wrong.

During his investigation, Warren failed to record his data, did not communicate his plans or the results adequately internally or with the client, and otherwise failed to conduct his investigation in compliance with good laboratory practice; something he should have been and claimed to have been familiar with. In fact, Warren's failure to communicate with the client resulted in the client flying two of its investigation teams, at substantial expense to the client, out to Lynchburg, Virginia to complain about Warren's performance and lack of communication.

As the person directly responsible for leading the investigation on behalf of Tri Tech, this behavior was unacceptable. No other Caucasian employees were staffed with leading the investigation into the olfactory issue. The management of the investigation on behalf of Tri Tech was solely the responsibility of Warren. Once again, Hallett was forced to step in and take over the management of the olfactory issue, which was ultimately corrected under Hallett's leadership.

I was personally involved in the decision to terminate Warren's employment at Tri Tech. Warren's race played no role in the decision to terminate him from employment. Tri Tech hired Warren knowing he was African American.

Additionally, the Caucasian employees listed by Warren in his Complaint and his Motion for Partial Summary Judgment were not similarly situated as Warren, and thus, are not proper comparators to show disparate treatment. Stated simply, discovery will show that these employees did not engage in the same type of misconduct/poor performance as Warren which resulted in Warren's discharge.

## II.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," by its own choice or in response to a motion from one of the parties. Fed. R. Civ. P. 12(f). Rule 12(f) motions are proper where "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Bailey v. Fairfax County*,

Civil Action No. 1:10–cv–1031, 2010 WL 5300874, *4 (E.D. Va. Dec. 21, 2010) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004)). However, such action by a court is a disfavored and "drastic remedy," *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), and "[i]t is settled that a failure to raise an affirmative defense in the appropriate pleading results in the loss of that defense," *RCSH Operations, L.L.C. v. Third Crystal Park Assoc. L.P.*, 115 Fed. App'x 621, 629 (4th Cir. 2004) (citations omitted). Indeed, "[w]hile counsel often plead vast numbers of affirmative defenses without being sure whether the facts will ultimately support the defenses, such pleading is done precisely so that the defenses will be preserved should discovery or further proceedings reveal factual support." *Wanamaker v. Albrecht*, 99 F.3d 1151 (Table), 1996 WL 582738, at *5 (10th Cir. 1996). "However, even if a party fails to plead an affirmative defense, the opposing party still must show 'prejudice or unfair surprise' before the waiver will be enforced." *RCSH Operations*, 115 Fed. App'x at 630.

Thus, in reviewing a motion to strike, a court must "must view the pleading under attack in a light most favorable to the pleader," and instead of granting a motion to strike, a court typically allows a defendant to amend an insufficient answer. *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D. N.C. 2010) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D. W.Va. 1993)). In this case, however, there is no need for Defendant to amend, as the answer is not insufficient, redundant, impertinent, or scandalous, and to the extent Plaintiff argues that the affirmative defenses raised in the answer are "perjured"[6] or "boilerplate," they do not cause any

---

[6] Plaintiff contends that one of the denials in the answer constitutes perjury; however, a fair reading of the answer refutes Plaintiff's interpretation. Paragraph 9 of the complaint states the following:

(continued...)

prejudice to Plaintiff, and they preserve defenses that are "contextually comprehensible" when viewed in light of Plaintiff's factual pleadings. *Odyssey Imaging, LLC v. Cardiology Associates of Johnston, LLC*, 752 F. Supp. 2d 721, 727 (W.D. Va. 2010).[7] The defenses must be considered

---

[6](...continued)
        Defendant stated in its response to the [EEOC] that it terminated Plaintiff's employment due to mislabeled products and complaint from customer. Although the Plaintiff denies and such allegation of fact surrounding mislabeled products or complaints lodged that were a result of Plaintiff's actions, Caucasian employees have conducted far worse offenses which could and possibly should have resulted in loss of business from its customers prior to Plaintiff's employment. Those Caucasian employees have not been terminated, reprimanded, or even subjected to any disciplinary actions by Defendant. On February 8, 2010, approximately four (4) days after Plaintiff's employment began, a formal notice of a recall of products produced by the Defendant in 2011 for microbial contamination of Burkholderia Cepacia prior to Plaintiff's employment was published by the Food and Drug Administration [the "FDA"] for Kao Brands, makers of Jergens and John Freda product dated December 29, 2009. The products were traced back to Defendants' facility solely and released under the auspices of the quality management system of Mark Hallett, Sr. Director of Quality (Caucasian), Cathleen Owen, Director of Quality (Caucasian), and Blake Hemmel, Manager of Quality (Caucasian). Manufacturing operations at the facility was halted for approximately one week. Neither of these Caucasian employees, directly responsible for preventing unadulterated products from entering the marketplace that can harm to the public under Federal Food, Drug, and Cosmetic act, were terminated for their actions.

In response, Defendant denied the majority of the paragraph, both for factual inaccuracies and Plaintiff's characterization of motives and events. Plaintiff now asserts that Defendant's answer denies that certain employees were "Caucasian," but this simply is not the case. Contrary to Plaintiff's assertion, Defendant's failure to explicitly admit or deny the race of certain of its employees does not support Plaintiff's argument that Defendant's "bad faith denial that [certain employees] were Caucasian undermines the Plaintiff's rights of due process protected under the Constitution and severely denies his ability to prosecute his claims." Plaintiff identified the race of certain employees parenthetically. Defendant's response simply does not respond at all to the race of the employees Plaintiff named in his complaint. Rather, it denies that the product in question was "traced back to Defendants' facility solely and released under the auspices" of the persons listed and identified as "Caucasian."

[7] To the extent Plaintiff suggests that the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), should apply to affirmative defenses raised in the answer, no United States Circuit Court of Appeals has considered the question. However, the district judges in the Western and Eastern Districts of Virginia who have considered the argument have not applied the *Twombly* and *Iqbal* pleading requirements to affirmative defenses raised in an answer. *See, e.g., Lopez v. Asmar's Mediterranean Food, Inc.*, Civil Action No. 1:10-cv-1218, 2011 WL 98573 (E.D. Va. Jan. 10, 2011); *Cheney v. Vitro America, Inc.*, Civil Action No. 7:10-cv-246, 2010 WL 5125281 (W.D. Va. Dec. 9, 2010); *Odyssey Imaging, LLC v. Cardiology Associates of Johnston, LLC*, 752 F. Supp. 2d 721, 725-27 (W.D. Va. 2010). Therefore it presently remains the case that "[a]n affirmative defense may be pleaded in general
(continued...)

in the context of the complaint, the answer, and Defendant's motion to dismiss (which I denied, as noted at the outset of this opinion); indeed, Plaintiff's claimed incomprehension of the basis of Defendant's affirmative defenses ignores the allegations of his own complaint.[8] In sum, Plaintiff has been provided with sufficient notice of the defenses Defendant intends to raise, and its denial, raised throughout its answer, that his employment was terminated on account of his race. Significantly, Plaintiff has not demonstrated any prejudice to him that justifies striking the affirmative defenses, and it is sufficient at this stage to place Plaintiff on notice "in short and plain terms" of the nature of the defenses. Fed. R. Civ. P. 8(b)(1)(A).

III.

To the extent Plaintiff's motion alternatively seeks partial summary judgment, it is readily apparent that I must deny the motion as premature. As a general proposition, "summary

---

[7](...continued)
terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 Fed. App'x 197 (4th Cir. 2004) (quoting 5 Charles Allan Wright & Arthur R. Miller, Federal Practice & Procedure § 1274, at 455–56 (2d ed. 1990)). In any event, at this early stage of this particular case, there is no serious risk of ambush from a lack of factual detail supporting Defendant's affirmative defenses. I note also that I have granted some leeway to the *pro se* Plaintiff by *sua sponte* denying Defendant's motion to strike Plaintiff's belated reply to Defendant's opposition to the instant motion.

[8] For example, Plaintiff argues that Defendant's first, second, third, fifth, seventh, eighth, ninth, tenth, eleventh, and thirteenth affirmative defenses contain legal conclusions and "do not contain sufficient factual language needed to impart fair notice to the Plaintiff." But the first, second, third, and fifth affirmative defenses relate to Plaintiff's alleged failures to state a claim and timely file the complaint, estoppel, and waiver by Plaintiff's own actions. Although I denied Defendant's motion to dismiss, Plaintiff was obviously on notice that Defendant took the position that he had failed to timely file and otherwise adhere to administrative procedures. And the fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth affirmative defenses deal with potential liability or the amount of damages Plaintiff seeks. *See Cheney*, Civil Action No. 7:10-cv-246, 2010 WL 5125281, *2 (finding that the affirmative defenses of failure to mitigate damages, waiver of claims, lack of notice of conduct by the defendant's employees, and good faith were "comprehensible in the context of the limited facts pleaded in the complaint," that the defendant had provided the plaintiff with "adequate notice of the nature of [the] defenses," and that the plaintiff had "not demonstrated that he will be prejudiced in any way by their inclusion in the answer.").

judgment is appropriate only after adequate time for discovery." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). At minimum, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986). Here, it is clear that discovery has not concluded. *See* docket no. 11, pretrial order, entered on February 4, 2013 (setting deadline to complete discovery at 90 days before trial date); *see also* docket no 12, notice of hearing, entered on February 19, 2013 ("Jury Trial set for 1/14/2014 thru 1/16/2014 09:30 AM in Lynchburg before Judge Norman K. Moon.").

Moreover, Plaintiff's motion is not supported with credible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34 (1986). Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322. To show that a genuine dispute of material fact exists (or does not exist), a party may not rest upon the mere allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Fed. R. Civ. P. 56(c)(1)(A); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir.1993). Here, Plaintiff relies on his own statements and his own characterization of the various documents he has submitted with his complaint and the instant motion to argue that there is no genuine dispute of material fact that he was treated differently than white employees. However, Plaintiff cannot

presently point to a single admission or answer made by Defendant that supports his claim, and it is well-settled that Plaintiff's "own naked opinion" that he was a victim of discrimination is not enough to entitle him to summary judgment. *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

## IV.

For the stated reasons, Plaintiff's "Motion to Strike Defendant's Affirmative Defenses and Answer, and in the Alternative, Motion for Summary Judgment" will be denied. An appropriate order accompanies this memorandum opinion.

Entered this 15th day of May, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE