| | |
|---|---|
| DAVID WARREN, <br>           *Plaintiff*, <br><br> v. <br><br> TRI TECH LABORATORIES, INC., <br>           *Defendant*. | CIVIL ACTION NO. 6:12-CV-00046 <br><br> MEMORANDUM OPINION <br><br> NORMAN K. MOON <br> UNITED STATES DISTRICT JUDGE |

  The *pro se* Plaintiff filed this action claiming race-based discriminatory treatment in employment and wrongful dismissal in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. After Defendant filed its answer, but before discovery had commenced, Plaintiff sought partial summary judgment, arguing that there was no genuine dispute of material fact that he, as an African-American male, received treatment disparate from white employees. I conducted a hearing on May 9, 2013, and on May 15, 2013, I issued a memorandum opinion and order denying Plaintiff's motion. I also denied Plaintiff's motion to strike Defendant's affirmative defenses and answers.

  Soon thereafter, Plaintiff filed a "Motion to Strike the Affidavit of Steve Fullerton, President of Tri Tech Laboratories, Inc." (the "Fullerton affidavit," or the "affidavit"). As discussed herein, the motion is without merit, and must be denied.

## I.

  In support of its opposition to Plaintiff's motion, Defendant filed the "Affidavit of Steven Fullerton," the president of Tri Tech Laboratories, Inc. since October 2007. The affidavit is quoted here in pertinent part (paragraph numbering omitted):

David Warren was employed as the Technical Director of Quality Assurance up until the time of his termination in May 2010.

The Technical Director of Quality Assurance is ultimately accountable for issues of product quality and customer dissatisfaction.

During Warren's tenure, Tri Tech received multiple complaints about Warren's performance, both internally as well as from Tri Tech's customers. Two events, in particular, led to Tri Tech's decision to terminate Warren's employment.

Warren, as the Technical Director of Quality Assurance, was assigned to lead an investigation into an FDA-regulated drug product that had incorrect labels on them. The investigation dragged on to such an extent that the customer in question would call daily inquiring as to when the product would ship.

Following a visual inspection of all products, Warren recommended that the products be shipped out. Importantly, even one mislabeled unit could trigger a recall. Doubtful of the accuracy of a visual inspection, Mark Hallett ("Hallett"), Senior Director of Quality, ordered an electronic re-inspection of the products, which uncovered 2,268 additional units with the wrong back label on them.

The investigation was assigned to and spearheaded **solely** by Warren, by virtue of his position at the Company. Warren's choice to disregard recognized laboratory procedures and instead incorporate visual inspection of the product labels directly resulted in the drawn-out and ultimately unsuccessful management of the quality issue in question.

The second major event behind Warren's termination involved an olfactory issue that affected several hundred thousand units from Tri Tech's largest client. Tri Tech and the client conducted a joint investigation, and Warren, as Technical Director, was once again asked to lead the investigation on behalf of Tri Tech.

During his investigation, Warren pursued a single theory of what had created the off-odor, and conducted testing in an attempt to discover the root cause. Ultimately, his single cause theory of the off-odor was proven wrong.

During his investigation, Warren failed to record his data, did not communicate his plans or the results adequately internally or with the client, and otherwise failed to conduct his investigation in compliance with good laboratory practice; something he should have been and claimed to have been familiar with. In fact, Warren's failure to communicate with the client resulted in the client flying two of its investigation teams, at substantial expense to the client, out to Lynchburg, Virginia to complain about Warren's performance and lack of communication.

As the person directly responsible for leading the investigation on behalf of

Tri Tech, this behavior was unacceptable. No other Caucasian employees were staffed with leading the investigation into the olfactory issue. The management of the investigation on behalf of Tri Tech was solely the responsibility of Warren. Once again, Hallett was forced to step in and take over the management of the olfactory issue, which was ultimately corrected under Hallett's leadership.

I was personally involved in the decision to terminate Warren's employment at Tri Tech. Warren's race played no role in the decision to terminate him from employment. Tri Tech hired Warren knowing he was African American.

Additionally, the Caucasian employees listed by Warren in his Complaint and his Motion for Partial Summary Judgment were not similarly situated as Warren, and thus, are not proper comparators to show disparate treatment. Stated simply, discovery will show that these employees did not engage in the same type of misconduct/poor performance as Warren which resulted in Warren's discharge.

**II.**

Plaintiff argues that the Fullerton affidavit is a "perjured document" because it is a verbatim or near-verbatim copy of a statement given by one of Defendant's former employees. Plaintiff does not refer to any law or precedent supporting the proposition that an affidavit must be drafted in the language of the affiant. In practice and reality, affidavits are routinely drafted by attorneys and attested to by the affiant. All that is required by Rule 56 of the Federal Rules of Civil Procedure is that an affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the stated matters. Fed. R. Civ. P. 56.

The Fullerton affidavit meets the requirements of Rule 56. In the affidavit, Fullerton swore to the fact that the was the president of Tri Tech during the time relevant to this action. As head of management, Fullerton would have been informed of or otherwise aware of an employee's performance issues, such as the performance issues Defendant raised against Plaintiff's allegations. Fullerton stated that he was personally involved in the decision to terminate Plaintiff's employment and was aware of the two separate incidents of poor

performance that led to the decision to fire Plaintiff. Fullerton therefore had personal knowledge of the facts and circumstances surrounding Plaintiff's performance issues and the termination of Plaintiff's employment at Tri Tech.

Plaintiff may not like the contents of the Fullerton affidavit, and he may disagree with the statements attested therein. But that does not warrant striking the affidavit. Indeed, the motion to strike is procedurally improper, as the affidavit is not a "pleading" as defined in Rule 7(a) of the Federal Rules of Civil Procedure. Only material included in a "pleading" may be subject to a Rule 12(f) motion to strike; thus, a party may not attack motions, briefs, memoranda, objections, and affidavits with this motion. 2 Moore's Federal Practice § 12.37[2] (3d ed. 2012); *see also Sum of $66,839.59 v. IRS*, 119 F. Supp. 2d 1358, 1359 (N.D. Ga. 2000) (stating that, since a Rule 12(f) "motion to strike is only appropriate with regard to a pleading and an affidavit is not a pleading . . . the motion to strike [the] affidavit is procedurally improper. Rather . . . the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony"); *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, Civil Action No. 05–2401, 2008 WL 2569418, at *1 (D. D.C. June 24, 2008) ("The document that plaintiff seeks to strike is not a pleading and is therefore not subject to being stricken upon the application of a party.").

Moreover, "[t]he standard upon which a motion to strike is measured places a substantial burden on the moving party," *Cameron v. MTD Products, Inc.*, Civil Action No. 5:03-CV-00075, 2004 WL 3256003, at *2 (N.D. W.Va. Jan. 7, 2004). Even if Fullerton's statements were properly subject to a motion to strike, Plaintiff has not demonstrated that the statements raise "insufficient defense[s]" or are "redundant, immaterial, impertinent, or scandalous" and thus susceptible to being stricken. *See* Rule 12(f).

## III.

Accordingly, the *pro se* Plaintiff's "Motion to Strike the Affidavit of Steve Fullerton, President of Tri Tech Laboratories, Inc." will be denied. An appropriate order accompanies this memorandum opinion.

Entered this __22nd__ day of November, 2013.

```
                                    _____
                                    NORMAN K. MOON
                                    UNITED STATES DISTRICT JUDGE
```